IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Marsha D. Auflick, | : | |
| Plaintiff | : | Civil Action 2:12-cv-29 |
| v. | : | Judge Frost |
| Michael J. Astrue, Commissioner of Social Security, | : | Magistrate Judge Abel |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

Plaintiff Marsha D. Auflick brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her applications for Social Security Disability and Supplemental Security Income benefits. This matter is before the Magistrate Judge for a report and recommendation on the administrative record and the parties' merits briefs.

**Summary of Issues.** Plaintiff Auflick maintains she became disabled in 2007, at age 42, by back, hip and knee pain, anxiety, depression, high blood pressure, hepatitis C, hyperlipidemia, edema and carpel tunnel syndrome. (*PageID* 233.) Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to included obesity among plaintiff's "severe" impairments which further compromised her physical residual functional capacity;

- The administrative law judge failed to accord the disability opinion of treating primary care physician, Dr. North the weight of rebuttable presumption, and instead relied on the opinion's of two State Agency nonexamining physicians.

**Procedural History.** Plaintiff Auflick filed her applications for disability insurance benefits and supplemental security income on September 24, 2009, alleging that she became disabled on August 30, 2007, at age 42. (*PageID* 196-99, 200-02.) The applications were denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On March 9, 2011, an administrative law judge held a video hearing at which plaintiff, represented by counsel, appeared and testified. (*PageID* 86-111.) A vocational expert also testified. (*PageID* 109-20.) On May 12, 2011, the administrative law judge issued a decision finding that Auflick was not disabled within the meaning of the Act. (*PageID* 66-77.) On November 20, 2011, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (*PageID* 52-55.)

**Age, Education, and Work Experience.** Auflick was born on August 11, 1965. (*PageID* 76, 228). She has a "limited" eleventh grade education. (*PageID* 240.) Auflick previously worked as a housekeeper, service coordinator in the home health care industry and a trainer at a mental health agency. (*PageID* 234, 262-69.)

**Plaintiff's Testimony.** The administrative law judge fairly summarized Auflick's testimony as follows:

> [T]he claimant testified that even with medications and the use of ice and heat, pain symptoms never goes away. She said that in the future, she will require surgery for her hip and that she currently cannot lift more than 10 to 15 pounds and cannot lift such things as her laundry. She testified that her pain symptoms are brought on by such things as sitting, standing

2

>and bending and she is most comfortable when she is lying in bed on her right side. She also said that she does not want to be around others and therefore does not like to go out in public and often gets agitated or upset when she does so. The claimant further stated that she has trouble sleeping because too many things are going on in her head at one time.

(*PageID* 72.)

**Medical Evidence of Record.** The administrative law judge's decision fairly sets out the relevant medical evidence of record. This Report and Recommendation will only briefly summarize that evidence. Although Auflick underwent a consultive psychological examination, plaintiff's assignments of error relate entirely to her physical impairments. Accordingly, the Court will focus its review of the medical evidence on Auflick's alleged physical impairments.

<u>O'Bleness Memorial Hospital.</u> Auflick was admitted to the hospital overnight in March 2008 due to nausea, vomiting and abdominal pain. (*PageID* 358.) Her past medical history included chronic pain, obesity, degenerative disc disease and hypertension. (*Id.*) Extremity examination showed no significant edema. (*Id.*)

Auflick presented to the emergency room on December 22, 2008 complaining of a five day history of vomiting. (*PageID* 337-53.) Musculoskeletal examination showed full range of motion in all of Auflick's extremities, with only some mild trace edema in her lower extremities, and normal neurological findings with no appreciated weakness. (*PageID* 343.) She was admitted overnight and discharged with diagnoses of intractable nausea and vomiting, chronic back pain and recent urinary tract infections. (*PageID* 339.)

<u>Doctor's Hospital - Nelsonville.</u>  While seen in the emergency room, A CT scan was performed on December 20, 2008 due to Auflick's history of left flank pain.  The CT scan showed bilateral pars defects at L5-S1 with facet hypertrophic changes, but no evidence of anterior listhesis.  (*PageID* 429.)

In January 2009, Auflick received treatment from Stephen Voto, M.D. for a closed injury fracture of her right distal fibula.  (*PageID* 470-78.)  By April 2009, her fracture was almost healed.  (*PageID* 470, 478.)

<u>Philip North, M.D.</u>  Auflick began treating with Dr. North, a primary care physician at the Columbus Southern Medical Center, in January 2009.  Initially, Auflick complained of constant aching in her lower back, which was aggravated by activity.  She noted significant relief from medication and rated her pain at 6/10 on an analog pain scale.  Dr. North noted a history of moderate back pain starting several years earlier that began without injury or obvious cause.  He noted Auflick was 5' 7" tall and weighed 184 lbs.  (*PageID* 375.)  The following month, Dr. North found moderate tenderness in her lumbar paraspinal muscles with mild decreased range of motion, and moderate tenderness of the left hip with decreased range of motion.  (*PageID* 378.)  Auflick's weight was recorded at 189 lbs.  (*Id.*)  On March 31, 2009, Auflick reported that her back pain occurred daily and she described the pain as aching.  (*PageID* 383.)  Auflick's weight was recorded at 193 lbs.  (*Id.*)  In April 2009, Auflick complained primarily of constant left hip pain which she described as aching and aggravated by movement.  She noted that her hip was relieved with medication.  (*PageID* 386.)

4

Musculoskeletal examination revealed moderate tenderness of the lumbar spine paraspinal muscles, mild decreased range of motion of her lumbar spine, negative straight leg raise and moderate tenderness of the left hip with range of motion.  (*Id.*)  Auflick's weight was recorded at 199 lbs.  (*Id.*)  By June 2009, Auflick's weight had increased to 200 lbs. and her complaints of daily back pain continued.  (*PageID* 391.)

In July and September 2009, Auflick again complained of left hip pain aggravated by activity, standing and sitting; she reported significant relief with medication.  (*PageID* 394-98.)  During these visits she rated her pain at 3-6/10.  (*Id.*)  In September, Auflick's weight was recorded at 206 lbs.  (*PageID* 396.)

In August 2009, Dr. North completed a Basic Medical form listing Auflick's diagnoses as lumbar disc displacement with radiculopathy, hip pain, high blood pressure, hyperlipidemia, and weight gain.  He reported his findings as moderate tenderness in the lumbar spine and left hip.  He opined that Auflick was limited to standing/walking less than three hours total in an eight-hour day and less than 20 minutes at one time, and sitting less than 30 minutes total in an eight-hour day and for less than 30 minutes without interruption.  Dr. North also opined that Auflick could only lift/carry six to ten pounds.  He concluded that Auflick was unemployable for 12 months or more.  (*PageID* 372-74.)

Auflick continued to be seen at the Columbus Southern Medical Center approximately 16 more times for back and hip pain through March 2011.  (*PageID* 513-62.)  Auflick generally reported her pain was in the 3-7/10 range; she reported that

medication and rest provided some relief, while increased activity worsened it.  (*Id.*) Examination findings throughout 2010 showed a mildly decreased range of motion of her lumbar spine and negative straight leg raising, with moderate tenderness in her hip upon range of motion and in her lumbar spine.  She exhibited symmetric deep tendon reflexes.  (*PageID* 518, 525, 527, 533, 536.)  In November 2009, Auflick's weight was recorded at 213 lbs.  (*PageID* 513.)  No focal neurological deficits were noted in June and July 2010.  (*PageID* 533, 536.)  Her diagnoses throughout this period included lumbar disc displacement, lumbar radiculopathy on the left, back pain, hip pain and weight gain.  (*See, PageID* 514, 517, 519, 521, 523, 526, 528, 531.)  By March 2010, Auflick's weight was recorded at 233 lbs.  (*PageID* 525.)

In September and October 2010, an increase in muscle spasm and tenderness was noted in Auflick's lumbar spine.  (*PageID* 542, 545.)  Auflick had no focal neurological deficits and deep tendon reflexes were symmetric.  (*Id.*)  By November 2010, musculoskeletal examination revealed moderate pain in her lumbar spine. (*PageID* 548.) In March 2011, examined showed decreased range of motion, increased muscle spasm, and increased tenderness in her hips.  Auflick's weight was recorded at 230 lbs.  (*PageID* 560.)

W. Jerry McCloud, M.D./Dimitri Teague, M.D.  On January 5, 2010, Dr. McCloud, a state agency physician, conducted a physical residual functional capacity assessment based on Auflick's medical records.  (*PageID* 503-10.)  Dr. McCloud found that Auflick retained the ability to occasionally lift 20 pounds, frequently lift 10 pounds,

stand or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour work day, and push or pull was unlimited.  (*PageID* 504.)  He found Auflick would be limited to occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but  could never climb ladders, ropes, or scaffolds.  (*PageID* 505.)  Dr. McCloud concluded that Auflick's symptoms were attributable to a medically determinable impairment.  (*PageID* 508.)  Dr. McCloud found Auflick's statements were only partially credible, noting that even though Auflick reported that she could not stand for a long time, the medical evidence supported that she could be on her feet for a normal work day.  (*Id.*)  Another state agency physician, Dr. Teague affirmed Dr. McCloud's assessment in April 2010.  (*PageID* 512.)

    **Administrative Law Judge's Findings.**  The administrative law judge found that:

  1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.

  2.  The claimant has not engaged in substantial gainful activity since August 30, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

  3.  The claimant has the following severe impairments: chronic back and hip pain; a depressive disorder; and a generalized anxiety disorder (20 CFR 404,1520(c) and 416.920(c)).

  4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

  5.  After careful consideration of the entire record, the [administrative law judge] finds that the claimant has the residual functional capacity to lift and

    carry 10 pounds frequently, to sit, with normal breaks, for a total of 6 of 8 hours per day, to stand and walk, with normal breaks, for a total of 2 of 8 hours per day and to push and pull within those limitations.  The claimant can never climb ladders, ropes or scaffolds and can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.  The claimant is limited to simple, routine tasks and can have only occasional and superficial contact with coworkers and supervisors.  The claimant can have no interaction with the public although she can be around the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 11, 1965 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 30, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*PageID* 68-77.)

    **Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

8

conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id.* *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Auflick argues that the decision of the Commissioner denying benefits should be reversed because:

- <u>The administrative law judge's decision failed to include "obesity" among the "severe" impairments.</u> (Doc. No. 12 at *PageID* 572.) Auflick contends that she gained 47 lbs. over a two year period. She attributed this to her inability to exercise or take prolonged walking. Auflick notes that musculoskeletal impairments are among those most adversely impacted by obesity in

9

accordance with Social Security Ruling[1] (SSR) 02-1p, yet the administrative law judge's decision failed to discuss the impact of Auflick's obesity on her musculoskeletal impairments and how it would impact her residual functional capacity. Auflick also contends that the administrative law judge's failure to consider the impact of her obesity is not harmless error. (*Id.* at *PageID* 573.)

- <u>The administrative law judge failed to accord the disability opinion of treating primary care physician, Dr. North the weight of rebuttable presumption, and instead relied on the opinion's of two State Agency nonexamining physician.</u> (*Id.* at *PageID* 573.) Auflick argues that the administrative law judge discounted the disability opinion of the treating physician, discounted the light work residual functional capacity of the atate agency reviewing physicians, and "split the difference" finding an residual functional capacity for sedentary work. This amounted to the administrative law judge not only failing to give the treating physician the weight of a rebuttable presumption, but in playing doctor to reach an residual functional capacity found by no one else. (*Id.* at *PageID* 575.)

**Analysis.** Obesity.

---

[1]"Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273, n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)). Social Security Rulings have been assumed to be binding on the Commissioner in the same way as Social Security Regulations. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004); *Ferguson*, 628 F.3d at 273, n.1.  In this case, the Court makes the same assumption regarding Social Security Ruling 02-1p.

Auflick argues that the administrative law judge improperly evaluated the impact of her obesity on her other impairments and how it would affect her residual functional capacity. She argues that the administrative law judge's decision does not contain a discussion of her obesity and that the administrative law judge failed to fully evaluate her obesity in accordance with SSR 02-1p.

Obesity, as defined in SSR 02-1p, "is a complex, chronic disease characterized by excessive accumulation of body fat." Social Security Ruling 02-01p, 2000 WL 628049 (Sept. 12, 2002). SSR 02-01p further states that the National Institutes of Health has established guidelines for classification of overweight and obese adults in its "Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults" ("Clinical Guidelines"). (*Id.* at *4).

The Clinical Guidelines classify an overweight or obese individual based on that person's Body Mass Index (BMI). (*Id.*) An adult with a BMI of 30.0 or above is considered "obese." (*Id.*) Obesity is further divided by the Clinical Guidelines into three levels: Level I (BMI of 30.0-34.9); Level II (BMI of 35.0-39.9); and, Level III (BMI greater than or equal to 40.0). (*Id.*)

SSR 02-01p provides that at step two of the five step evaluation, obesity may be considered severe alone or in combination with another medically determinable impairment. It further provides that the Administration will do "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." SSR 02-01p[6]. SSR 02-01p also explains that a

11

claimant's obesity must be considered not only at step two of the Commissioner's five step evaluation process, but also at the subsequent steps. The Ruling provides that:

> The effects of obesity may not be obvious. . . . An assessment should also be made of the effect of obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. . . . [O]ur RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular continuing basis . . . . In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity.
>
> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone.

SSR 02-01p. *See also* 20 C.F.R. §404.1523 (explaining that if the Administration finds "a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.") In sum, SSR 02-01p "specifies that the administrative law judge must explain how conclusions regarding a claimant's obesity were reached." *Fleming v. Barnhart*, 284 F.Supp.2d 256, 271 (D. Md. 2003). SSR 02-01p is binding on all components of the Administration. *See* 20 C.F.R. §402.35(b)(1); *Blea v. Barnhart*, 466 F.3d 903, 911 (10th Cir. 2006).

An adjudicator must consider the impact of a claimant's obesity on her residual functional capacity. At step five of the five step of the sequential analysis, the burden shifts to the Administration to show that there are other jobs in significant numbers in the economy that the claimant can perform consistent with her residual functional

capacity, age, education, and work experience.  *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548(6th Cir. 2004); 20 C.F.R. §404.1520 (a)(4)(v).  When the claimant is obese, the administrative law judge must consider this in his assessment. SSR 02-01p; *Young v. Barnhart*, 282 F.Supp.2d 890, 897-898 (N.D. Ill. 2003).

      The administrative law judge's opinion did not assess Auflick's obesity in the manner contemplated by SSR 02-01p.  The administrative law judge's decision is devoid of any discussion regarding the severity of Auflick's obesity.  The administrative law judge also failed to consider the impact her obesity had in combination with her other severe impairments.  Specifically, the administrative law judge failed to consider the extent to which plaintiff's musculoskeletal impairments were exacerbated by her obesity.

      During the hearing, Auflick testified that she was told to lose weight and that it would help her knees.  (*PageID* 106.)  She also testified that she had actually gained weight and did not know why she had not lost weight, but attributed it to not being able to exercise because she cannot walk very far.  (*Id.*)  Dr. North or a physician's assistant at Columbus Southern Medical Center recorded Auflick's weight between 183 pounds and 233 pounds.  *See PageID* 375-96, 513-60.  Auflick was listed as obese when seen in the hospital in March 2008.  (*PageID* 358.)

      Nowhere in the administrative law judge's decision were any of the aforementioned weights noted.  The Commissioner argues that there is no diagnosis of obesity and that no physician ever prescribed weight loss to relieve her muskuloskeletal

13

pain. However, by March 2010 Auflick, who is 5' 7" tall, weighed over 230 pounds. Because the administrative law judge never mentioned Auflick's obesity and its impact, if any, on her ability to perform sedentary work, it is impossible to determine whether the administrative law judge actually followed SSR 02-01p when considering plaintiff's obesity in the sequential evaluation process.

At step three of the sequential process, therefore, the administrative law judge erred by failing to perform "an individualized assessment of the impact of obesity" on Auflick's functioning, and deciding whether her obesity is severe. *See* SSR 02-1p at *12. Although the mere failure of an administrative law judge to consider a claimant's medically determinable impairment as nonsevere, instead of severe, may be found to be "legally irrelevant," *see Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 190-91 (6th Cir. 2009), such is not the case here because there is no indication the administrative law judge even considered Auflick's obesity as an impairment – severe or nonsevere – nor that he considered her obesity at any step in the sequential analysis. *Simpson* explains the regulatory basis for this error:

> Pursuant to 20 C.F.R. §[] 404.1523...: "In determining whether your physical or mental impairment or impairments are of a sufficient medical severity ... we will consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process."
>
> Pursuant to 20 C.F.R. §[] 404.1545(a)(2)...: "If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically

14

> determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."

*See Simpson*, 344 Fed. Appx. at 191, n.1.

At step three of the sequential process, when looking at the listings, the administrative law judge simply looked at the medical findings to determine whether the listing was met. He did not consider whether Auflick's obesity had an impact on the severity of the particular listing. *See PageID* 70.

Similarly, when assessing Auflick's residual functional capacity, the administrative law judge simply states that he reduced Auflick's capacity to sedentary work without considering whether Auflick's obesity in combination with her chronic back and hip pain could reasonably result in further work restrictions. The Magistrate Judge finds that the administrative law judge has failed to comply with the guidelines for evaluating obesity as set forth in SSR 02-01p and has therefore failed to satisfy his obligation of evaluating the severity and functional limitations resulting from Auflick's obesity.

<u>Treating physician.</u>  Auflick next maintains that the administrative law judge erred in rejecting the opinions of Dr. North, her treating physician, who had assessed Auflick's residual functional capacity. Within this contention of error, Auflick also indicates that in reaching his decision, the administrative law judge substituted his own medical judgment in place of not only Dr. North's opinion, but also that of the state agency reviewing physicians, Drs. McCloud and Teague.

The treating physician rule, when applicable, requires the administrative law judge to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the administrative law judge.  *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record.  (*Id.*)

Furthermore, the Commissioner's regulations provide that he will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1).  When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).  In determining the weight to assign a treating source's opinion, the Commissioner considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and

16

the extent to which the source is familiar with other information in the case record relevant to decision. (*Id.*)

There is a rebuttable presumption that a treating physician's opinion is entitled to great deference. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). However, for the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(d)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson*, 378 F.3d at 544 (6th Cir. 2004).

The administrative law judge gave "very little weight" to the opinion of treating physician, Dr. North, finding that Dr. North provided no documentation or reasoning for his assessment that Auflick is limited to less than 20 minutes of standing and walking at one time and less than 30 minutes of sitting at one time. (*PageID* 75.) The administrative law judge also rejected Dr. North's assessment on the basis that the ultimate issue of whether an individual is disabled or unemployable is reserved for the Commissioner of the Social Security Administration. (*Id.*)

In formulating Auflick's residual functional capacity, the administrative law judge assigned "great" weight to the assessments of the state agency physicians, Drs.

McCloud and Teague. (*PageID* 75.)  However, the administrative law judge found that although Dr. McCloud opined that Auflick is capable of light work, he reduced the residual functional capacity to sedentary exertion.  The administrative law judge also opined that the portion of Dr. McCloud's assessment limiting Auflick to only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl and never climb ladders, ropes or scaffolds was consistent with the other medical evidence.  (*Id.*) The administrative law judge did not adopt all the exertional limitations described by Dr. McCloud, but chose to adopt only some of those limitations.  He provided no explanation for his decision to reduce Auflick's residual functional capacity from light as found by Dr. McCloud down to sedentary.  Auflick asserts that where the administrative law judge "split the difference" between the treating physician and another doctor, but failed to give treating physician either controlling weight or the most weight in the record, such finding constitutes reversible error.

      The Sixth Circuit has found that to be entitled to substantial deference an administrative law judge's non-disability finding  must clearly articulate the rationale underlying the decision. *See Hurst v. Secretary of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985).  In *Hurst*, the court discussed the articulation necessary to support an administrative law judge's decision regarding disability benefits.  The Court stated: "[i]t is more than merely 'helpful' for the administrative law judge to articulate reasons ... for crediting or rejecting particular sources of evidence.  It is absolutely essential for

18

meaningful appellate review." *Hurst*, 753 F.2d at 519 (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984)).

Thus, an administrative law judge's decision must articulate with specificity reasons for the findings and conclusions that he or she makes. Similarly, Social Security Ruling ("SSR") 82-62, provides that the "rationale for a disability decision must be written so that a clear picture of the case can be obtained." SSR 82-62 at *4. The administrative law judge's decision must "follow an orderly pattern and show clearly how specific evidence leads to a conclusion." *Id.; See also Morris v. Secretary of Health & Human Servs.*, No. 86-5875, 1988 WL 34109, at * (6th Cir. Apr. 18, 1988) (*per curiam*) (noting, in reliance upon *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981), that, when an administrative law judge fails to mention relevant evidence in his or her decision, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored"). An administrative law judge may not ignore evidence favorable to plaintiff. Rather, he must articulate the evidence accepted or rejected when making a disability finding to enable the reviewing court to engage in meaningful judicial review. *See Hurst v. Secretary of H.H.S.*, 753 F.2d 517, 519 (1985). *See also Bailey v. Commissioner of Social Sec.*, 173 F.3d 428 (6th Cir. 1999)(unpublished), 1999 W.L. 96920.

Since Dr. North's office notes record only mild limitations in range of motion, moderate tenderness in the lumbar spine, no neurological deficits, and a good response to medication, there is evidence supporting the administrative law judge's decision to discount his opinion about Auflick's residual functional capacity. However, the

19

administrative law judge's decision does not reflect the rigorous analysis required by the Commissioner's regulations. On remand the administrative law judge should consider both the impact of Auflick's obesity on her muskuloskeletal pain and what weight to give Dr. North's opinion about her residual functional capacity.

**Conclusions.** For the reasons set forth above, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **REMANDED** to properly evaluate the medical source opinions of Dr. North and the state agency physicians under the legal criteria set forth in the Commissioner's Regulations and Rulings, and as required by case law and properly consider plaintiff's obesity in light of SSR 02-01p.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

    s/Mark R. Abel
United States Magistrate Judge